**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. BRANDY NASH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **CIV-26-** |
| ) | |
| **1. JOIN PARACHUTE, LLC,** ) | |
| **2. JOIN PARACHUTE 13, LLC,** ) | |
| **3. JOIN PARACHUTE 31, LLC,** ) | |
| **and** ) | |
| **4. JOIN PARACHUTE 26, LLC,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendants.** ) | **ATTORNEYS LIEN CLAIMED** |

**COMPLAINT**

**COMES NOW** the Plaintiff, Brandy Nash, and for her Complaint against the Defendants, alleges and states as follows:

**PARTIES**

1. Plaintiff, Brandy Nash, is an adult female who at all relevant times was a resident of Garfield County, Oklahoma.

2. Defendants are:

a. Join Parachute, LLC, an entity doing business in and around Garfield County, Oklahoma;

b. Join Parachute 13, LLC, an entity doing business in and around Garfield County, Oklahoma;

c. Join Parachute 31, LLC, an entity doing business in and around Garfield

County, Oklahoma; and

d. Join Parachute 26, LLC, an entity doing business in and around Garfield County, Oklahoma.

**JURISDICTION AND VENUE**

3. This action arises out of Plaintiff's former employment with Defendants and is based on claims of: (a) disability discrimination, disability-association discrimination, harassment and the creation of a hostile work environment, and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (b) violations of the Family and Medical Leave Act ("FMLA"); (c) race discrimination, race-association discrimination, harassment, the creation of a race-based hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (d) race discrimination, race association discrimination, harassment, the creation of a race-based hostile work environment and retaliation in violation of 42 U.S.C. §1981; (e) worker's compensation retaliation; (f) failure to pay wages in violation of the Fair Labor Standards Act ("FLSA") and Oklahoma state law; and (g) breach of contract.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. §1367(a).

5. To the extent required, Plaintiff exhausted her administrative remedies.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 7, 2026. The EEOC issued a notice of right to sue dated on or about May 18, 2026, which was received by Plaintiff thereafter. This case is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

6. All acts complained of herein occurred in or around Garfield County, Oklahoma. Garfield County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. §1391(b).

**STATEMENT OF FACTS**

7. Plaintiff (who is Native American and Hispanic and married to an African-American male) was employed with Defendants from on or about December 11, 2023, until on or about November 12, 2025.

8. Throughout her employment, Plaintiff worked as a Medical Screening Tech and was a satisfactory or better employee.

9. On or about April 14, 2025, Plaintiff was required to seek continuous FMLA leave to care for her mother who suffers from serious health conditions.

10. Around the same time, Plaintiff was diagnosed with anxiety. She notified Defendants of her impairment and advised that she was required to take medication for the same.

11. In or around May 2025, Plaintiff used intermittent FMLA to continue to care for her mother.

12. Plaintiff also requested an adjusted schedule to work from 6:00 am to 2:00 pm and have the weekends off to facilitate her travel to care for her mother out of state.

13. Prior to her advising that she suffered from anxiety and using FMLA leave to care for her mother, Plaintiff had been approved for a promotion to Key Holder.

14. However, when she returned to work from FMLA leave, the position had been given to other individuals (Tara Wilson, who is White; Jamie Elson, who is White; and Julie Ray, who is White).

15. Plaintiff complained to Regional Manager Lindsey Barnett (who is White) about the failure to promote as promised.

16. Barnett stated that she needed someone in the position, and Plaintiff was not there since she was on FMLA caring for her mother. In other words, Barnett used Plaintiff's mother's condition and Plaintiff's use of FMLA against her, retaliating against Plaintiff in this term and condition of employment.

17. In addition, Defendants began denying Plaintiff breaks and isolating her from others in the workplace.

18. Plaintiff complained to her supervisors, Ashby Smith (who is White), Ray, and Elson about the inequitable and retaliatory treatment. However, no remedial measures were taken in response.

19. On or about May 14 or 15, 2025, Plaintiff was moving heavy boxes from a shipment and sustained an injury while at work.

20. On or about Friday, May 16, 2025, Plaintiff sought medical treatment for the injury to her shoulder, neck and back. She was given a steroid shot and an MRI was scheduled. Plaintiff notified Defendants of this on or about the same day.

21. Over the next few weeks, Plaintiff underwent diagnostic testing which revealed she suffered from *inter alia* a frozen shoulder, bulging discs, disc space loss, plate sclerosis and osteophytes, and posterior spurring.

22. As a result of Plaintiff's mental and physical impairments, she is a qualified individual with a disability, in that, she suffers from mental and physical impairments that substantially limit her ability to perform one or more major life activities, including but not limited to her ability to lift, grasp, sit, stand, twist, engage in repetitive movement, think, concentrate, sleep, emote and eat.

23. Her impairments also substantially impact her internal bodily processes, including but not limited to her cognitive, neurological and musculoskeletal systems.

24. Plaintiff also has a record of such impairments and/or was regarded as having such impairments. At all relevant times though, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

25. On or about Thursday, June 19, 2025, Plaintiff spoke again with her supervisor Smith about her impairments and requested a reasonable accommodation in the form of light duty and a taller chair, providing Smith with a doctor's note.

26. During the week of June 23, 2025, Plaintiff was scheduled for doctor's

appointments in the afternoon. Therefore, she contacted HR on June 20, 2025 to request to work in the mornings to accommodate this schedule.

27. Sanchia Dominguez in HR advised that they would send Plaintiff ADA accommodation and FMLA paperwork. Dominguez also approved Plaintiff's accommodation request.

28. On or about Sunday June 22, 2025, Plaintiff sent a text to Assistant Manager Lisa Gunter (who is White) to remind her of HR's approval of Plaintiff's schedule of 6:00 am to 2:00 pm that week due to her doctor's appointments.

29. Gunter told Plaintiff that she was scheduled for 10:00 am.

30. Plaintiff informed Gunter that her refusal to accommodate her schedule was retaliation.

31. On or about Monday, June 23, 2025, Plaintiff arrived at work at 6:00 am. Gunter had apparently informed Elson and Ray to tell Plaintiff to go home and return at 10:00 am. Plaintiff asked if she could stay until HR was in the HR office, but such request was refused. Elson and Ray contacted Regional Manager Barnett, who told Plaintiff to go home and she would reach out to HR.

32. Plaintiff submitted a grievance, complaining of retaliation and left the workplace. Plaintiff was not paid for her time at work that morning, i.e., approximately two to three hours.

33. On or about June 24, 2025, Plaintiff was written up by Gunter and Quality

Assurance Manager Kaitlyn Dodge (who is White). They alleged she cursed the day before (neither was present). Plaintiff denied the accusation.

34. Plaintiff submitted a complaint of retaliation and a hostile work environment to HR (Dominguez and Mary Ann (last name unknown), who is White).

35. In or around July/August 2025, Plaintiff informed Smith, Ray and Elson that due to her shoulder, neck and back injuries, she would be undergoing surgery in or around January 2026.

36. In or around September 2025, Ashby Smith moved Plaintiff to working in the lab.

37. On or about October 8, 2025, Plaintiff was written up after she had informed QA Manager Dodge she should be wearing PPE in the area.

38. Plaintiff asked to file a grievance over the write-up. However, Smith told her she would be fired if she complained.

39. In spite of the threat, Plaintiff submitted a complaint to HR.

40. Plaintiff was off work on vacation days from on or about October 14, to October 22, 2025.

41. On or about October 23, 2025, Plaintiff complained to HR about racial comments in the workplace. Particularly, Plaintiff was present when QA Manager Dodge stated that her sons call her son who is of mixed race the “N” word. Dodge stated she could not stop her children from using the “N” word. Plaintiff was offended by QA Manager

Dodge's comments.

42. In or around early-November 2025, Plaintiff advised Smith, Ray and Elson that her husband, who also suffered from a back impairment, was scheduled to undergo surgery on or about December 3, 2025. She asked about completing paperwork to care for her husband following his surgery, but was told they would follow up with her closer to her need for leave.

43. On or about November 12, 2025, Plaintiff was in the breakroom when she was approached by Gunter and Barnett (in person) with HR Jessica Sher (who is White) (via zoom on a laptop). Plaintiff was fired.

44. Plaintiff was told it was allegedly due to a seal on a bottle not being done correctly. However, the sealer was malfunctioning. Plaintiff had reported issues with the machine in October and November 2025. Management was aware of the problem.

45. In fact, because of the malfunctions with the machine, management had instructed Plaintiff to seal bottles in a manner outside of proper practice, contrary to her training and health and safety regulations.

46. Despite others having issues with the sealing machine, Plaintiff was the only person fired allegedly over this issue.

47. Moreover, Defendants had a history of discriminating against employees who suffered from disabilities and/or took FMLA. In fact, Plaintiff overheard disparaging statements regarding employees who suffered from disabilities and/or took medical leave,

including comments by management about their desire to terminate said individuals.

48. As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

**COUNT I: ADA/ADAAA**

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

49. The matters alleged above constitute violations of the ADA/ADAAA in the form of disability discrimination, disability association discrimination, disability harassment, the creation of a disability-based hostile work environment and retaliation.

50. More specifically, Plaintiff's mother and husband are qualified individuals with a disabilities, as set forth above.

51. Plaintiff is entitled to relief under federal law because she was qualified to perform her job; she was written up and subsequently terminated; Defendants knew at the time of such adverse acts that her mother and husband had disabilities; and the adverse acts occurred under circumstances giving rise to an inference of discrimination.

52. Additionally, Plaintiff was a qualified individual with a disability, in that, she suffers from impairments, described above, which substantially limited one or more major life activities, as set forth above. Further, Plaintiff's disabilities impact one or more of her internal bodily processes, as shown herein. And, Plaintiff had a record of disability and/or was regarded as disabled because she had an actual or perceived impairment at the time she

was terminated.

53. Despite her impairments, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

54. Plaintiff is entitled to relief under federal law because she was qualified to perform her job; she was written up and subsequently terminated; Defendants knew at the time of such adverse actions that she had a disability; and the adverse actions occurred under circumstances giving rise to an inference of discrimination.

55. Plaintiff is entitled to relief under the ADA and ADAAA for the creation of a disability-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from disability-based animus.

56. The matters alleged above also constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

57. The matters alleged above also constitute a retaliation for her opposition to Defendants' unlawful disability-based employment practices.

58. Plaintiff is entitled to relief because she is a qualified individual with a disability; she engaged in protected activity; she suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

59. As damages, Plaintiff has suffered lost income, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

60. Because the actions of Defendants were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages

**COUNT II: FMLA**

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

61. The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the FMLA.

62. Plaintiff was entitled to medical leave because she worked for Defendants, entities with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

63. Defendants interfered with Plaintiff's rights under the FMLA by terminating her employment in the midst of her taking FMLA leave.

64. Defendants also retaliated against Plaintiff for her use of FMLA leave by writing Plaintiff up and terminating Plaintiff.

65. As a direct and proximate result of Defendants' willful conduct, Plaintiff suffered injuries and is entitled to recover all damages or other equitable relief allowed by

law, including, but not limited to, lost wages, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

**COUNT III: 42 U.S.C. § 1981**

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

66. The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination, race association discrimination, harassment, the creation of a race-based hostile work environment and retaliation.

67. Plaintiff is entitled to relief for race discrimination because she is a member of a protected class (based on her own race and via the association with her husband), she was qualified for her job; she was subject to adverse actions including *inter alia* being written up; and the adverse actions occurred under circumstances giving rise to an inference of discrimination.

68. Plaintiff is also entitled to relief for race discrimination because she is a member of a protected class (based on her own race and via the association with her husband), she was qualified for her job, she was terminated and her position was not eliminated. Moreover, her termination reason was pretextual.

69. Plaintiff is also entitled to relief for the creation of a race-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was severe or pervasive enough to alter the terms conditions or privileges

of his employment and the harassment and hostility stemmed from race-based animus.

70. Plaintiff is further entitled to relief for retaliation because she engaged in protected opposition to race discrimination; she suffered adverse actions including *inter alia* being written up and subsequently terminated; subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

71. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by 42 U.S.C. § 1981.

72. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by 42 U.S.C. § 1981.

**COUNT IV: Title VII (Race)**

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

73. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination, race association discrimination, harassment, the creation of a race-based hostile work environment and retaliation.

74. Plaintiff is entitled to relief for race discrimination because she is a member of a protected class (based on her own race and via the association with her husband), she was qualified for her job; she was subject to adverse actions including *inter alia* being written up; and the adverse actions occurred under circumstances giving rise to an inference

of discrimination.

75. Plaintiff is also entitled to relief for race discrimination because she is a member of a protected class (based on her own race and via the association with her husband), she was qualified for her job, she was terminated and her position was not eliminated. Moreover, her termination reason was pretextual.

76. Plaintiff is also entitled to relief for the creation of a race-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was severe or pervasive enough to alter the terms conditions or privileges of his employment and the harassment and hostility stemmed from race-based animus.

77. Plaintiff is further entitled to relief for retaliation because she engaged in protected opposition to race discrimination; she suffered adverse actions including *inter alia* being written up and subsequently terminated; subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

78. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

79. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

**COUNT V: Workers' Compensation Retaliation**

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

80. The matters alleged above constitute retaliation in violation of the Oklahoma Administrative Workers' Compensation Act.

81. Plaintiff sustained a job-related injury for which she could assert a claim for benefits under the Administrative Workers' Compensation Act. And, Plaintiff received medical treatment for such injury. Defendants had knowledge of Plaintiff's work-related injury. And, Plaintiff was consequently fired.

82. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

83. Defendants' actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

**COUNT VI: Unpaid Wages**

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

84. The matters alleged above constitute violations of the FLSA and Oklahoma state law in that Defendants failed to pay Plaintiff wages for all hours worked.

85. Defendants agreed to pay Plaintiff wages at a regular rate of $17.10 per hour for all hours worked.

86. On or about June 23, 2025, Plaintiff worked approximately two (2) to three (3)

hours for which Defendants failed to pay Plaintiff.

87. The failure to pay wages earned is a violation of the Fair Labor Standards Act and Oklahoma state law, Okla. Stat. tit. 40, §165.3.

88. As such, Plaintiff is entitled to all damages provided for by law, including attorneys' fees and costs. And, based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

**COUNT VII: Breach of Contract**

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

89. Defendants failed to pay Plaintiff wages at a regular rate of $17.10 per hour for all hours worked.

90. Such conduct constitutes a breach of contract with Plaintiff.

91. As damages, Plaintiff is entitled to the loss of all amounts not paid, as well as all consequential and incidental damages, compensatory damages, punitive damages, and attorney fees and costs as allowed by state law.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief under federal and state law as this Court may deem equitable and

appropriate.

**RESPECTFULLY SUBMITTED THIS 24TH DAY OF JULY, 2026**.

s/Jana B. Leonard
**LEONARD & ASSOCIATES, P.L.L.C.**
**JANA B. LEONARD, OBA # 17844**
**SHANNON C. HAUPT, OBA # 18922**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800 TELEPHONE**
**(405) 239-3801 FACSIMILE**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**